UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CODY BAKER, ET AL., | ) | CIV. 09-5085-JLV |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| MASCO BUILDER CABINET | ) | |
| GROUP, INC., d/b/a MERILLAT | ) | |
| INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

**NATURE OF THE CASE AND PROCEDURAL HISTORY**

On March 9, 2009, Karen Strauss, the President of Masco Builder

Cabinet Group ("MBCG"), distributed a memo to the local employees of MBCG.

(Dockets 117-1, p. 3 ¶ 11 & p. 9; 128, ¶ 24).  The memo informed the

employees the Rapid City, South Dakota, plant would be closing by the end of

September 2009.  Id. at p. 9.  The memo also stated "[a]ll employees will be

offered a severance package and we are identifying resources to assist them

with their job search."  Id.  On the same day, two MBCG representatives met

with the employees of the Rapid City plant and told them of the plant's closure.

(Dockets 123, ¶ 9; 128, ¶¶ 16-19).  The representatives informed employees of

MBCG's plan to pay severance to each employee upon the closure of the plant.

(Dockets 123, ¶¶ 9-12; 128, ¶¶ 16-19).  The plan provided as follows:

Hourly Employees

1.    One week per years service (minimum two weeks)
2.    Cobra one time payment equal to current coverage based on
      severance weeks

3.      Will get severance if employee stays to closing (DATE) or, if by mutual agreement, released sooner
4.      If employee leaves on their own prior to (DATE) then no severance
5.      Due to economic conditions, job opportunities at other BCG facilities are limited, if any at all.  If there appears to be a need, the Company will have discussions with those individuals who may be qualified.  At this time there are no jobs identified.

Salary Employees

1.      Two weeks per years service (minimum two weeks)
2.      Cobra one time payment equal to current coverage based on severance weeks
3.      Will get severance if employee stays to closing (DATE) or, if by mutual agreement, released sooner
4.      If employee [sic] leave on their own prior to (DATE) then no severance
5.      Other opportunities within BCG will be on an individual basis based on Company need and qualifications of current employee.

(Dockets 100-7, p. 2; 123, ¶ 11; 128, ¶ 22).

The announcement of the closure and severance was reported in the Rapid City Journal.  (Dockets 123, ¶ 14; 128, ¶ 27).  Unfortunately, the Rapid City Journal was mistaken in its reporting of MBCG's plan.  Id.  In response, MBCG, through its representative Tom Sollars, MBCG's Director of Labor Relations and Field Services, provided a written memorandum on March 19, 2009, which was presented to the employees.  (Dockets 123, ¶ 11; 128, ¶ 28). The memo stated:

Since the announcement last week of the forthcoming closure of the Rapid City Particleboard Plant, a couple of issues have come to our attention.  The first issue was a misquote in the Rapid City Journal that stated the Company intended to give employees severance that would be equal to one months [sic] salary for every year worked.  In

2

actuality, as stated in the employee meetings severance is to be one week of base pay for every year worked with a minimum of two weeks. This is consistent with all other plant closures [M]BCG has had to execute in recent years.

It has also been rumored that the Company will renege on the severance that has been announced. This is to inform you that this will absolutely not happen. We will pay severance as we have in all other plant closures in accordance with what has already been announced. If employees remain until released, they will receive the following: 1) one week of pay per years of service, minimum two weeks, and 2) a one time payment to help offset some of the Cobra premium costs.

As we get closer to the date of closing, we will meet with you again to answer questions you may have at that time.

(Docket 100-14, p. 3).

Ms. Strauss testified in her deposition that at the time of the announcement of the closure of the Rapid City plant, MBCG did not believe the Rapid City plant could be sold as an ongoing concern. (Docket 117-3, Transcript ("TR") p. 48, lns. 22-25). However, e-mails indicate there were potential buyers expressing interest at the time the announcements regarding closing and severance were made. (Dockets 100-11; 130-3). On June 25, 2009, MBCG posted a memorandum to employees that it was engaged in discussions with potential buyers. (Docket 117-9, TR p. 113, lns.1-11 & p. 30).

On July 17, 2009, MBCG issued a notice of the closure of the Rapid City plant pursuant to the Worker Adjustment and Retraining Notification Act ("WARN Act") which required a 60-day notice be given to the Rapid City plant employees before closure. (Dockets 100-23; 117-32, TR p. 46, lns. 2-7; 123, ¶ 41; 128, ¶¶ 64-65).

On August 11, 2009, MBCG met with the Rapid City employees again. (Dockets 123, ¶ 47; 128, ¶ 69).  At this meeting, the employees were informed the plant was being sold and the severance, as previously discussed in the March 9 meeting and the March 19 memorandum, would not be paid. (Dockets 123, ¶ 47; 128, ¶ 69).  Rather, severance would only be offered to those employees who were not offered positions by the new owners.  (Docket 128, ¶ 69).

On September 17, 2009, the plant was sold to Madera, LLC. ("Madera"). (Docket 128, ¶ 73).  As part of the purchase agreement, Madera agreed to "offer employment to each person employed by [MBCG] on the Closing Date, at salary/wage and benefit levels which are in the aggregate equivalent to such person as of the Closing Date[]" though it was understood that Madera could immediately furlough or terminate the employees.  (Dockets 100-24, p. 8; 100-29).  MBCG provided each employee with a check in an amount equivalent to two weeks pay as Madera anticipated the plant being closed for two weeks during the transition.  (Docket 128, ¶¶ 76-77).

Without MBCG's knowledge, Madera immediately sold the plant to Countertops, Inc.  Countertops was to employ 100 of the former MBCG employees.  (Docket 116, ¶ 74).  MBCG ceased operations on September 17, 2009.  Its employees had no right to continued employment with either Madera or Countertops, Inc., because South Dakota is an "at will" employment state.

On September 22, 2009, plaintiffs, all former employees of MBCG, commenced this action in state court.  (Docket 1).  The complaint alleged

MBCG entered into a contract with employees for the payment of severance to the employees if they would maintain their employment with MBCG until the plant closed.  Id.  Plaintiffs contend they fulfilled the contract by remaining until the closure of the plant by MBCG.  Id.  They further contend MBCG breached the contract by failing to pay the severance under the terms of the contract.  Id.  An amended complaint was filed on October 5, 2009, adding additional plaintiffs.  Id.  On October 14, 2009, MBCG removed the action to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 alleging the existence of diversity of citizenship and an amount in controversy exceeding $75,000.  MBCG contends a contract never existed and, therefore, it is not liable to plaintiffs.  (Docket 16).  The parties each moved for summary judgment.

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Id. at 248.  Accordingly, "the mere existence of *some* alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## DISCUSSION

**A.    Applicable Law**

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as it is a diversity action. In diversity actions, the court applies the substantive law of the forum state. See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th

Cir. 2002).  In this case, the forum state is South Dakota.  Accordingly, the court shall apply South Dakota law.

**B.    Breach of Contract Claims**

Plaintiffs claim MBCG breached the contract regarding severance pay. To prevail on a breach of contract claim, plaintiffs must show (1) an enforceable promise; (2) a breach of that promise; and (3) resulting damages.  <u>See</u> <u>Guthmiller v. Deloitte & Touche, LLP</u>, 699 N.W.2d 493, 498 (S.D. 2005) (citations omitted).  MBCG moves for summary judgment asserting plaintiffs cannot provide sufficient proof to prevail on a breach of contract claim. (Docket 114).  MBCG alleges there was neither an enforceable promise, a breach of the alleged promise, nor any resulting damages.  Plaintiffs, however, move the court to find the existence of a contract.  Plaintiffs further move the court to find MBCG breached the contract and is liable for the severance payments.  Thus, the court must first determine whether an enforceable agreement exists.

**1.    Was there an enforceable contract?**

MBCG contends there is no enforceable promise because it did not intend to enter into a legally binding agreement.  (Docket 115, pp. 3 & 10).  In its motion it states, "there is an absence of intent by MBCG to contract or to induce some type of sought after performance by Plaintiffs.  Consequently, requisite consent and valid, bargained for consideration are lacking, and no enforceable promise or contract arose."  <u>Id.</u> at p. 10.

"A contract is an agreement to do or not to do a certain thing." SDCL § 53-1-1. South Dakota law provides the "[e]lements essential to existence of a contract are: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." SDCL § 53-1-2. The "[e]xistence of a valid contract is a question of law." In re Estate of Neiswender, 616 N.W.2d 83, 86 (S.D. 2000) (citing Owens v. Moyes, 530 N.W.2d 663, 665 (S.D. 1995). "The proponent has the burden 'to prove the contract by evidence so clear and satisfactory' that no doubt remains." Neiswender, 616 N.W.2d at 86 (quoting Neuharth v. Brunz, 181 N.W.2d 982, 95 (S.D. 1970)).

After a review of the record and pertinent caselaw, the court finds the parties did enter into a contract. " 'Whether a contract is formed is judged objectively by the conduct of the parties, not by their subjective intent. The question is not what the party really meant, but what words and actions justified the other party to assume what was meant.' " Geraets v. Halter, 588 N.W.2d 231, 234 (S.D. 1999) (quoting Crince v. Kulzer, 498 N.W.2d 55, 57 (Minn. App. 1993)). As a result, the court looks to the conduct of the parties and not their subjective intent.

MBCG's conduct is evidence of its intent to enter into a binding agreement and of its consent to the contract. On March 9, 2009, MBCG issued a memo from Karen Strauss stating that severance "will be offered." (Docket 117-1, p. 9). The same day, corporate representatives met with the employees and explained the terms of the severance being offered and how eligibility would be determined. (Dockets 123, ¶¶ 9-12; 128, ¶¶ 16-19). Ten days later,

the terms offered orally by the corporate representatives were memorialized in writing and presented to the employees in the form of a memo after the terms had been misconstrued by local media.  (Docket 100-14, p. 3).  The fact severance was only payable upon the meeting of certain conditions by the employees, namely remaining employed with MBCG until the plant closing, indicates MBCG's "plan" was, in fact, an offer rather than a mere gesture of good will.  MBCG's reiteration of the terms of the offer after the misreporting by the Rapid City Journal further confirms the initial conversation between corporate representatives and the Rapid City employees was, indeed, an offer. As a result, the court finds MBCG's conduct, regardless of its subjective intent, indicates the extension of an offer.

MBCG further contends it did not consent to the contract.  MBCG reasons because it had no motivation to induce the employees to stay and because it had no intent to make a binding offer, the court cannot find MBCG consented to the contract.  "Consent is not mutual unless the parties all agree upon the same thing in the same sense."  SDCL § 53-3-3.  South Dakota law provides "[c]onsent of the parties to a contract must be: (1) Free; (2) Mutual; and (3) Communicated by each to the other."  SDCL § 53-3-1.  Consent is a question of law " 'to be judged on the objective facts of the particular case.' " LaMore Restaurant Group, LLC v. Akers, 748 N.W.2d 756, 761 (S.D. 2008) (quoting Amdahl v. Lowe, 471 N.W.2d 770, 774 (S.D. 1991)).

Restatement (Second) of Contracts § 22 provides:

(1)     The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.

(2)     A manifestation of mutual assent may be made even though
        neither offer nor acceptance can be identified and even though
        the moment of formation cannot be determined.

MBCG argues it did not intend to make a legally binding offer, therefore, there is no manifestation of consent. However, under South Dakota law, MBCG's subjective intent is immaterial. See Geraets, 588 N.W.2d at 234. The court finds MBCG has not presented a question of material fact with regard to whether it consented to the agreement. MBCG's consent to the contract is evidenced by the extension of the offer at the March 9, 2009, meeting and the reiteration of the terms of the offer by memorandum to the employees on March 19, 2009. It is disingenuous to suggest MBCG did not consent to the very offer it extended.

MBCG also argues summary judgment must issue as each individual plaintiff has not demonstrated his or her consent to the contract. Again, this is a question of law to be determined based upon the objective facts. See LaMore, 748 N.W.2d at 761. The undisputed facts demonstrate each plaintiff was an employee at the time of MBCG's offer. (Dockets 86, ¶ 1; 87, ¶1). Each had access to the memorandum setting forth the terms of the offer. (Dockets 100-14, p. 3; 101, ¶11; 123, ¶11; 128, ¶ 28). Each remained employed by MBCG until the sale of the plant on September 17, 2009. (Dockets 101, ¶ 43; 123, ¶ 43). Under South Dakota law, "[p]erformance of the conditions of a proposal or the acceptance of the consideration offered with a proposal is an acceptance of the proposal." SDCL § 3-7-7. The court finds MBCG has not raised an

issue of material fact as each plaintiff's performance of the conditions of MBCG's offer was a manifestation of his or her acceptance.

MBCG further contends there is no enforceable contract as there was insufficient consideration. "Any benefit conferred or agreed to be conferred upon the promiser by any other person to which the promiser is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promiser, is a good consideration for a promise." SDCL § 53-6-1. "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." SDCL § 53-6-4. "It is a recognized principle of law that nothing is consideration for a contract that is not accepted or regarded as such by both parties." Richter v. Industrial Finance Co., Inc., 221 N.W.2d 31, 34 (S.D. 1974).

MBCG contends "[p]laintiffs provided nothing to MBCG beyond that which they had provided as employees prior to the alleged severance offer; they were compensated by MBCG for all time worked and were free to resign at any time." (Docket 121, p. 7). Restatement (Second) of Contracts § 71 provides:

    (1)     To constitute consideration, a performance or a return promise must be bargained for.

    (2)     A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

    (3)     The performance may consist of
        (a)     an act other than a promise, or
        (b)     a forbearance, or
        (c)     the creation, modification, or destruction of a legal relation.

In this case, the offer provided for the payment of a monetary sum to any employee who maintained employment with MBCG until the closing of the Rapid City plant. In other words, the agreement was not that the employees work for MBCG but that the employees would continue employment while MBCG prepared to close the Rapid City plant. The consideration offered by the employees, therefore, was not only performance of their job duties but a continuation of performance until MBCG ceased operations. As a matter of law, the court finds the employees' act of remaining employed with MBCG rather than seeking alternative employment provided sufficient consideration to form a contract.

MBCG next contends the agreement is not an enforceable contract because it does not provide all essential terms. "If an agreement leaves open essential terms and calls for the parties to agree to agree and negotiate in the future on essential terms, then a contract is not established." Weitzel v. Sioux Valley Heart Partners, 714 N.W.2d 884, 892 (S.D. 2006) (citing Werner v. Norwest Bank South Dakota, N.A., 499 N.W.2d 138, 141 (S.D. 1993)). While agreements " 'must be sufficiently definite to enable a court to give it an exact meaning[,]. . . absolute certainty is not required; only reasonable certainty is necessary.' " Weitzel, 714 N.W.2d at 892 (quoting Estate of Eberle, 505 N.W.2d 767, 770 (S.D. 1993)).

The offer made by MBCG provides definite terms regarding what was expected of the employees and what benefit they would receive in exchange for remaining employed. The offer was specific in how the severance benefit would

12

be calculated.  The court finds the terms essential to the contract were present.
The lack of specificity as to whether the benefit would be paid in installments
or lump sum, or describing who would be eligible for a COBRA payment, or if
those who were not eligible for a COBRA payment would receive an alternative
payment, are not details material to the essence of the contract.  The court
finds the contract does not fail for lack of essential terms.

The court finds MBCG has not raised a genuine issue of material fact
regarding whether an enforceable contract existed.  Summary judgment is
granted to plaintiffs and defendant's motion for summary judgment on this
issue is denied.

### 2. Was there a breach?

MBCG contends it is entitled to summary judgment because plaintiffs
cannot show there was a breach of the contract.  First, MBCG argues closure of
the plant was a condition precedent to the payment of severance.  (Docket 115,
p. 15).  MBCG asserts the plant did not close but was sold and remained
operational.  Id.  MBCG reasons severance was not due and owing.  Id.

> A condition precedent is a contract term distinguishable from a
> normal contractual promise in that it does not create a right or duty,
> but instead is a limitation on the contractual obligations of the
> parties.  "A condition precedent is a fact or event which [sic] the
> parties intend must exist or take place before there is a right to
> performance.  A condition is distinguished from a promise in that it
> creates no right or duty in and of itself but is merely a limiting or
> modifying factor. . . . If the condition is not fulfilled, the right to
> enforce the contract does not come into existence."

Johnson v. Coss, 667 N.W.2d 701, 705-06 (S.D. 2003) (quoting 13 Richard A.

Lord, Williston on Contracts § 38:1 (4th ed 2000)).  "Generally, a contract will

be unenforceable when it contains a condition precedent that fails to occur." Weitzel, 714 N.W.2d at 896 (citing Johnson, 667 N.W.2d at 705).

The court concurs severance is not owed if the plant did not "close." The parties, however, disagree as to whether the plant did "close" under the meaning of the contract. "When determining the meaning of a contract, 'effect will be given to the plain meaning of its words.' " Lillibridge v. Meade School Dist. #46-1, 746 N.W.2d 428, 432 (S.D. 2008) (quoting In re Dissolution of Midnight Star, 724 N.W.2d 334, 337 (S.D. 2006)). " 'However, if the contract 'is uncertain or ambiguous,' parol and extrinsic evidence may be used for clarification.' " Lillibridge, 746 N.W.2d at 432 (quoting Pauley v. Simonson, 720 N.W.2d 665, 667-68 (S.D. 2006)). "[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Pauley, 720 N.W.2d at 668.

The plain meaning of the word "close" as used in the contract and defined by Webster's Dictionary is "to suspend or stop the services, sessions, or operations of." Webster's Third New International Dictionary, 426 (2002). Black's Law Dictionary defines "close" as "[t]o conclude; to bring to an end[.]" Black's Law Dictionary, 290 (9th ed. 2009). The court finds the term "close" is not ambiguous.

The record reflects MBCG sold the Rapid City plant. (Docket 128, ¶ 73). The last day plaintiffs were employed by MBCG was September 17, 2009. Id. MBCG thereafter made a payment to each employee of two weeks' severance.

Id. at ¶¶ 77-79.  The court finds, as a matter of law, under the plain meaning of the word "close," MBCG "suspend[ed] or stop[ped] the services, sessions, or operations of" the Rapid City plant on September 17, 2009.  Further illustrating MBCG's termination of its relationship with the employees is the immediate sale of the Rapid City plant by Madera to Countertops, Inc., allegedly unbeknownst to MBCG.  Id. at ¶ 74.

Upon MBCG's cessation of operations at the Rapid City plant, MBCG's obligations under the contract became due.  The employees who fulfilled the terms of their obligations by maintaining their employment with MBCG were entitled to receive the benefit of the contract.  MBCG's failure to pay the severance in full in accordance with the terms of the contract resulted in a breach of the contract.  Summary judgment will issue in favor of plaintiffs on this issue.

### 3.  Were there damages?

Finally, MBCG moves for summary judgment on the issue of damages. (Docket 115, p. 11).  MBCG asserts summary judgment should be granted as the individual plaintiffs have failed to demonstrate damages.  MBCG contends plaintiffs did not suffer damages as they were paid for the services which they performed.  South Dakota law provides:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, be likely to result therefrom.  No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

SDCL § 21-2-1.  Moreover, South Dakota law provides "[t]he detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon."  SDCL § 21-2-2.  If plaintiffs can prove they met their obligations under the contract, they would be entitled to damages which "were in fact caused by the breach."  <u>McKie v. Huntley</u>, 620 N.W.2d 599, 603 (S.D. 2000).  Thus, plaintiffs would be entitled to the money owed under the contract.  <u>See</u> SDCL § 21-2-2.  MBCG calculated the severance which would be owed to each plaintiff.  (Docket 100-31).  As a result, the court finds the alleged loss is "clearly ascertainable in both its nature and origin."  <u>Id.</u> (citing SDCL § 21-2-1).  Defendant's motion for summary judgment on the issue of damages is denied.

### 4.    Modification/Novation

MBCG contends plaintiffs' claims fail as it rightfully modified the terms of the severance offer.  MBCG cites <u>Brooks v. Carolina Tel. & Tel. Co.</u>, 290 S.E.2d 370 (N.C. App. 1982) and <u>Parker v. Kraft Foods Global, Inc.</u>, No. 3:7CV87, 2008 WL 4447005 (W.D. N.C. 2008), for the proposition that an employer may change the terms of an employment contract at any time.  The court is neither bound to follow nor persuaded by either of these cases.  In both <u>Brooks</u> and <u>Parker</u>, the plaintiff sought benefits under the terms of a plan which was in place at the time employment commenced.  <u>Brooks</u>, 290 S. E.2d at 371-73; <u>Parker</u>, 2008 WL 4447005, *3-4.  These are not the circumstances in this case.  Here, we have a separately created contract, not an existing condition of employment.  The terms of this contract do not provide for modification.  The court finds MBCG had no right to unilaterally modify the contract.

MBCG also asserts a novation took place.  Under South Dakota law a "novation is made by the substitution of a new obligation between the same parties, with intent to extinguish the old obligation."  SDCL § 20-7-6. "Essential elements of novation are: (1) a previous valid obligation, (2) agreement of all parties to the substitution under a new contract based on sufficient consideration, (3) extinguishment of the old contract, and (4) the validity of the new contract."  Haggar v. Olfert, 387 N.W.2d 45, 50 (S.D. 1986) (citations omitted).

MBCG announced on August 11, 2009, it would not be paying the severance as previously offered.  (Dockets 123, ¶ 47; 128, ¶ 69).  Despite the announcement, each of the plaintiffs maintained their employment with MBCG.  (Docket 117, ¶ 70).  MBCG reasons the plaintiffs' continuation of employment is a manifestation of acceptance of the new contract, thus resulting in a novation of the previous severance offer.  South Dakota law provides "[a] contract not in writing may be altered in any respect by consent of the parties, *in writing*, without a new consideration, and is extinguished thereby to the extent of the alteration."  SDCL § 53-8-6 (emphasis added).  The provisions of SDCL § 53-8-6 require that any alteration be memorialized in writing.  MBCG has not presented the court with the written alteration. Accordingly, the court finds a novation did not occur and MBCG's motion for summary judgment on theories of modification or novation is denied.

## 5. Frustration

MBCG moves for summary judgment alleging frustration of the contract thereby relieving it of the obligation to pay severance. The South Dakota Supreme Court held "[t]he application of the doctrine of commercial frustration, is a question of law, to be determined by the court from the facts of the case." Groseth International, Inc., v. Tenneco, Inc., 410 N.W.2d 159, 166 (S.D. 1987).

Here, the principal purpose of the contract was the payment of severance conditioned upon employee performance until closing of the plant. MBCG contends the plant was sold, thus frustrating the purpose of compensating the employees for the loss of employment. Plaintiffs contend the sale of the plant was under the control of MBCG. Furthermore, plaintiffs assert MBCG knew of the possibility of a sale at the time the offer was made and should not be excused from performance.

Restatement (Second) of Contracts § 265 provides:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary.

MBCG's claim that the purpose of the contract was frustrated through defendant's sale of the plant is based on actions entirely within MBCG's control. The South Dakota Supreme Court held "[i]f the frustrating event was within the promisor's control or due to the promisor's 'fault,' then he is not excused." Groseth, 410 N.W.2d at 165. Under South Dakota law, MBCG

cannot avoid its obligation to pay severance when it caused the claimed "frustration."  MBCG's motion for summary judgment on this basis is denied.

## C.    Is Severance Considered a Wage?

Plaintiffs seek a double measure of damages under § 60-11-7 alleging MBCG acted in a manner which was oppressive and/or malicious.  Section 60-11-7 of the South Dakota Codified Laws provides, "[i]n any action for the breach of an obligation to pay wages, if a private employer has been oppressive, fraudulent, or malicious, in the employer's refusal to pay wages due the employee, the measure of damages is double the amount of wages for which the employee is liable."  MBCG moves the court to find as a matter of law a severance payment does not constitute a wage.[1]

"Statutory interpretation and application are questions of law."  Block v. Drake, 681 N.W.2d 460, 463 (S.D. 2004).  Unfortunately, SDCL ch. 60-11 does not define the term "wage."  Nor is a definition of "severance pay" provided. Thus, when construing the statute, the court is required to give " ' words their plain meaning and effect and read[] statutes as a whole, as well as enactments relating to the same subject.' "  Lewis & Clark Rural Water System, Inc. v. Seeba, 709 N.W.2d 824, 830 (S.D. 2006) (quoting Sanford v. Sanford, 694 N.W.2d 283, 287(S.D. 2005)).

The plain meaning of "wage," as defined by Webster's Dictionary, is "a pledge or payment of . . . monetary remuneration by an employer . . . for labor

---

[1]MBCG requested the court consider In re Quality Stores, Inc., 693 F.3d 605 (6th Cir. 2012).  The invitation is refused under the principles of South Dakota statutory construction as further discussed in this section.

or services . . . according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits[.]" Webster's Third New International Dictionary, 2568 (2002). "Severance pay" is defined as "an allowance . . . based on length of service that is payable to an employee on severance . . . ." Id. at 2081.

Plaintiffs argue under these plain meanings, the severance payment is a "wage" as it is a payment in exchange for the service of maintaining employment with MBCG until closing. Plaintiffs further point to the fact the severance would be considered a wage under the Internal Revenue Code. (Docket 126-17, TR p. 55, ln. 22 - p. 56, ln. 5). The court is bound to construe § 60-11-7 in conjunction with the other state statutes and not in conjunction with the Internal Revenue Code. See Lewis & Clark, 709 N.W.2d at 830. The court examines ch. 60-11 of the South Dakota Codified Law for further insight.

In reviewing the chapter, the court notes the legislature requires payment of wages once a month in § 60-11-9, yet requires "[p]rompt payment" of "unpaid wages or compensation" in § 60-11-10 and allows an employer to withhold the "wages or compensation" until return of the employer's property in § 60-11-11. In § 60-11-15, the legislature determined it was a misdemeanor offense for an employer to intentionally withhold wages which are due pursuant to § 60-11-9 through § 60-11-13, but there is no mention of compensation. Yet, in § 60-11-14, the legislature specifically limited the application of §§ 60-11-8 through 60-11-23 to cash wages and not to any other

form of compensation, thus raising an even greater question as to what is meant by "wages" in § 60-11-7. Regardless, these statutes indicate the legislature differentiated between a wage (money owed for labor or services) and other compensation (money owed in conjunction with the employment relationship). The court concludes the legislature would have specifically included the term "other compensation" or similar language in § 60-11-7 when defining the liability of an employer for a breach of an obligation to pay wages if it had intended to hold an employer doubly liable for more than just the failure to pay the proper salary or hourly wage. The court finds the severance payments, though a form of compensation, would not be considered "wages" under § 60-11-7 and summary judgment is granted in favor of MBCG on this issue.

MBCG also moves the court to find as a matter of law its failure to pay the severance allegedly owed was not malicious, fraudulent, or oppressive. A finding that MBCG acted maliciously, fraudulently, or oppressively is required for plaintiffs to recover damages under § 60-11-7. Because the court finds plaintiffs cannot recover under § 60-11-7, the court need not reach this issue.

**D.      Punitive Damages**

MBCG moves the court to rule plaintiffs cannot seek punitive damages. (Docket 132, pp. 16-18). MBCG contends plaintiffs did not set forth a claim for punitive damages in their complaint or amended complaint and are barred from seeking it now.

"Punitive damages 'are not ordinarily recoverable in actions for breach of contract, because, as a general rule, damages for breach of contract are limited to the pecuniary loss sustained.' " <u>Grynberg v. Citation Oil & Gas Corp</u>, 573 N.W.2d 493, 500 (S.D. 1997) (quoting <u>Hoffman v. Louis Dreyfus Corp.</u>, 435 N.W.2d 211, 214 (S.D. 1989)).  Section 21-3-2 of the South Dakota Codified Laws provides:

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, . . .the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

Under South Dakota law, plaintiffs' contract action cannot be the basis of a claim for punitive damages.  MBCG's motion for summary judgment on this issue is granted.  Accordingly, it is hereby

ORDERED that plaintiffs' motion for summary judgment (Docket 99) is granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Docket 114) is granted with respect to plaintiffs' claim for damages pursuant to SDCL § 60-11-7 and plaintiffs' potential claim for punitive damages.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is denied with regard to all other issues.

Dated December 14, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE